**EOD**
03/23/2006

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| § | | |
| KELLY MARIE MOONEY § | Case No. 02-10755 | |
| § | | |
| Debtor § | Chapter 7 | |

| | | |
|---|---|---|
| KELLY MARIE MOONEY § | | |
| § | | |
| Plaintiff § | | |
| § | | |
| v. § | Adversary No. 04-6075 | |
| § | | |
| GREEN TREE SERVICING, LLC § | | |
| f/k/a CONSECO FINANCE § | | |
| SERVICING CORP. § | | |
| § | | |
| Defendant § | | |

## MEMORANDUM OF DECISION

Now before the Court in the above-referenced adversary proceeding is the "Debtor's Complaint for Violation of the Automatic Stay, to Enforce an Order of the Court, for an Injunction, and to Recover Damages, Costs and Attorneys' Fees" filed by Kelly Marie Mooney ("Mooney" or the "Debtor"). At trial the Debtor voluntarily dismissed portions of her complaint, and the only issue remaining to be tried was whether Green Tree violated the discharge injunction issued in Mooney's bankruptcy case. A trial was conducted on that issue, after which the Court took the matter under advisement.[1]

---

[1] The Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. §1334 and §157(b)(2)(O), and 11 U.S.C. §§105, 524, and 727. This Court has personal jurisdiction over the parties to this adversary proceeding. This is a core proceeding under 28 U.S.C. §157(b)(2)(O).

This memorandum of decision disposes of all issues pending before the Court.

## Factual and Procedural Background

On April 27, 1996, Kelly Marie Mooney and Christopher Mooney, then-married, executed a Manufactured Home Retail Installment Contract and Security Agreement (the "Contract") for the purchase of a 1996 Schult-New Generation manufactured home, bearing serial number V401691.[2] The Contract was subsequently sold to Conseco Finance Servicing Corp. ("Conseco"), a predecessor-in-interest to the current Defendant, Green Tree Servicing, LLC f/k/a Conseco Finance Servicing Corp. ("Green Tree").[3] Conseco properly perfected its security interest in the manufactured home.[4]

Unfortunately, Mooney and her husband encountered personal and financial difficulties, resulting in a divorce in October, 2001. Soon thereafter, Mooney filed a voluntary petition under Chapter 7 of the Bankruptcy Code on January 29, 2002. Mooney

---

[2] *See* Defendant's Ex. A.

[3] On December 17, 2002, Conseco Finance Corp., and its wholly owned subsidiaries, including Conseco Finance Servicing Corp., filed for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "Conseco Bankruptcy Court"). *See* Defendant's Ex. C. On or about March 14, 2003, the Conseco Bankruptcy Court entered an order authorizing and approving an Asset Purchase Agreement between Conseco Finance Corp. and CFN Investment Holdings, LLC ("CFN"). *See* Defendant's Ex. D. The Asset Purchase Agreement provided for the sale of certain of Conseco Finance Corp.'s assets, including its wholly owned subsidiary, Conseco Finance Servicing Corp., to CFN, free and clear of any third party claims associated with the assets. Subsequent to the closing of the Asset Purchase Agreement, CFN changed the name of Conseco Finance Servicing Corp. to "Green Tree Servicing, LLC." Among the assets purchased by CFN and subsequently owned by Green Tree was Conseco's interests arising from the Contract and the related security documents.

[4] *See* Defendant's Ex. B.

properly listed Conseco as a creditor in her bankruptcy case, and Conseco was sent proper notice of the filing of her case on January 31, 2002.[5] As Mooney no longer resided in the manufactured home after the divorce, she also filed a Statement of Intention in her bankruptcy case, dated January 29, 2002, declaring her intent to surrender the manufactured home to Conseco.[6] This intent was subsequently confirmed to Conseco by the Debtor's attorneys on more than one occasion.[7] After filing her bankruptcy case, the Debtor never resided in nor exercised any control over that home.

On June 29, 2002, this Court granted to the Debtor a discharge under 11 U.S.C. §727 (the "Discharge Order") which discharged the Debtor from personal liability on the indebtedness owed to Conseco secured by the manufactured home.[8] The explanation accompanying the discharge order provided the following information to all creditors:

> The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor. . . . A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.
> However, a creditor may have the right to enforce a valid lien, such

---

[5] *See* Ex. P-4.

[6] *See* Ex. P-3.

[7] *See* Ex. P-5 and P-8.

[8] *See* Ex. P-7.

as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case.[9]

The discharge order was properly served on Conseco. As previously noted, Green Tree acquired the affected Contract on March 14, 2003.

Green Tree contacted the Debtor on two occasions in March, 2004, ostensibly for the purpose of seeking information about the Debtor's ex-husband, Christopher Mooney. However, on March 29, 2004, Green Tree filed and served upon the Debtor an original state court petition against both the Debtor and Christopher Mooney in the 4th Judicial District Court of Rusk County Texas under Case No. 2004-120 and styled *Green Tree Servicing, L.L.C. F/K/A Conseco Finance Servicing Corp. v. Christopher M. Mooney and Kelly M. Mooney* (the "State Court Lawsuit").[10] Though entitled as a "Plaintiff's Original Petition for Lien Foreclosure," the state court petition demanded that a money judgment be entered against the Debtor for reasonable and necessary attorney's fees, costs of Court, with post-judgment interest accruing until paid.[11]

Green Tree was aware that Mooney no longer occupied the manufactured home for some time prior to May, 2004. In fact, the state court petition filed by Green Tree on March 29, 2004 stated Green Tree's belief that Mooney could be served at her new

---

[9] See *Discharge of Debtor* entered in case # 02-10755 on June 29, 2002 (dkt #9).

[10] *See* Ex. P-9.

[11] *Id.*

address — 206 Alberta Avenue in Henderson, Texas. On May 3, 2004, Green Tree filed a "Motion for Substituted Service" in the State Court Lawsuit seeking authority to serve the Debtor by posting the citation at that new address.[12] Yet on May 13, 2004, Green Tree, through its authorized agent and representative, Kendra Dunn, contacted the Debtor by telephone with the purported purpose of identifying the Debtor's location so that she might be served with the state court petition. Dunn claims that she was not personally aware of Mooney's bankruptcy discharge at the time of that call, but had she fully investigated Green Tree's file regarding Mooney, she would have become aware of the discharge order.[13]

During the May 13th telephone call with the Debtor, Dunn threatened that if Green Tree was not able to serve her personally, it would go "public." Mooney asked what "going public" meant, and Dunn explained that Green Tree would publish the existence of the lawsuit in the local newspaper in order to achieve service and people in that area would learn that she had not paid her debts. Though Green Tree had previously been made aware of both Mooney's intention to surrender the manufactured home, and the fact that she did not currently reside at the location of that home, Mooney nevertheless again

---

[12] *See* Ex. P-10. Such service was accomplished on May 17, 2004.

[13] Green Tree maintained records regarding the Debtor in three different places: in a computer system reflecting only events in the most recent year, in another computer system reflecting information over a year old, and in an imaging area containing copies of written documents relevant to a particular file. Though Dunn acknowledged that the computer screen immediately available to her should have reflected Mooney's bankruptcy discharge, it apparently did not due to some unexplained internal failure at Green Tree. Nevertheless, other files maintained by Green Tree and available to the collection agent upon inquiry did reflect Mooney's discharge.

advised the Green Tree representative of these facts.

On May 20, 2004, the Debtor filed in her bankruptcy case a "Motion to Reopen Case to File Suit Against Creditor for Injunction to Prevent Further Violations of the Discharge Order and to Recover Damages, Costs and Attorneys Fees Related to Violations of the Automatic Stay and Discharge Order."[14] The motion to reopen alleged as grounds for reopening the case "a knowing, persistent, and continuing violation of ... the discharge order" by Green Tree. The motion to reopen was served upon Thomas Corea and Dunham Biles, the attorneys of record for Green Tree in the State Court Lawsuit, on May 20, 2004. Though one would expect that service of such a motion would cause the recipient and its representatives to cease all efforts with respect to the account, at least until the matter could be investigated, the motion had no such effect on Green Tree's state court attorneys.

On May 24, 2004, Green Tree, through Dunn, again contacted the Debtor by telephone. The May 24th telephone call was considerably longer than the calls the Debtor had earlier received from Green Tree in March and on May 13. When Dunn asked the Debtor whether she had passed information to her ex-spouse as Green Tree had earlier requested, the Debtor's acknowledgment that she had not and would not contact her ex-spouse on Green Tree's behalf changed the tenor of the conversation. Dunn told the Debtor that this collection issue was, and would continue to be, her problem because she

---

[14] *See* Ex. P-13.

was equally responsible for payment of the Contract, and that Green Tree just wanted payment on the mobile home. The Debtor told Dunn that she was not liable for the indebtedness, and if Dunn wanted to know why, she could check Green Tree's file or call the Debtor's attorney.[15] Eventually, the Debtor stated that she did not care if the mobile home burned, and Dunn then falsely represented to the Debtor that she would be responsible for payments on the home even if it burned. At the end of the May 24th phone call, Dunn informed the Debtor that she would be calling back in two weeks.[16]

On June 1, 2004, the Debtor filed an answer to the State Court Lawsuit and asserted the discharge in bankruptcy as a defense.[17] The answer was properly served on Green Tree's state court attorney. Despite the repeated warnings to Green Tree that its pursuit of contract damages against Mooney constituted a violation of the discharge injunction, as was clearly expressed to Green Tree's legal representatives in the motion to reopen the Debtor's bankruptcy case and the state court answer, Green Tree continued its

---

[15] Green Tree asserted at trial that the Debtor had some affirmative duty to inform Dunn of the bankruptcy discharge. While it may have been reasonable for the Debtor to have done so, Green Tree had already been provided with the notice of the discharge order to which it was legally entitled. Furthermore, the Debtor was understandably frustrated with Green Tree and its predecessor and her frustration elucidates her evasive behavior. Throughout the course of her bankruptcy case, and for a substantial period of time after the entry of the discharge order, the Debtor was repeatedly contacted by Green Tree representatives about her intentions with respect to the debt and the collateral, even though her intentions regarding that issue had been clearly communicated on numerous occasions. Such constant pestering by a company which was obviously not reviewing its own business records, and particularly in the light of the completion of a Chapter 7 case, would frustrate the most patient of persons.

[16] Dunn never actually called back because the case was reassigned to another collector due to an unrelated change in Dunn's responsibilities.

[17] *See* Ex. P-15.

pursuit of the remedies in the State Court Lawsuit. On June 14, 2004, Green Tree filed a Motion for Summary Judgment and a proposed form of judgment against the Debtor in the State Court Lawsuit.[18] The terms of the proposed judgment submitted by Green Tree would have granted to Green Tree an award of attorney's fees, costs, and post-judgment interest.[19] In failure of its obligations as a litigant, Green Tree's state court attorneys failed to serve a copy of the motion for summary judgment upon McNally & Patrick, L.L.P., the Debtor's attorneys of record in the State Court Lawsuit.

On June 16, 2004, Green Tree, through its attorneys, did serve upon the Debtor's lawyers a Notice of Hearing regarding the Plaintiff's Motion for Summary Judgment which had been filed in the State Court Lawsuit.[20] Having received notice of a hearing on a motion for summary judgment which he had never received, much less responded to, Michael J. McNally attempted to contact Green Tree's attorneys on behalf of the Debtor. On June 25, 2004, Mr. McNally sent a letter to Green Tree's state court attorney, Thomas M. Corea, which: (1) requested a copy of the Motion for Summary Judgment which had been filed; and (2) demanded that Green Tree cease all of its collection efforts against the Debtor. The letter noted that:

> The Bankruptcy Court has entered an Order granting Kelly Mooney's
> Motion to Reopen her case. The case has been reopened for the reasons

---

[18] *See* Ex. P-17.

[19] *See* Ex. P-18.

[20] *See* Ex. P-19.

stated in the Motion, which include filing a complaint to prevent further violations of the discharge order by your client.[21]

Neither Mr. Corea nor any other Green Tree representative ever timely responded to the Debtor's June 25th request.[22]

On August 3, 2004, the Debtor filed a response to Green Tree's Motion for Summary Judgment in the State Court Lawsuit. Such response was properly served upon the designated attorneys for Green Tree and included an affidavit from the Debtor supporting her defense to the State Court Lawsuit that the debt had been discharged in bankruptcy. Finally, after the initiation of this adversary proceeding and in light of the pending hearing on the motion for summary judgment, Green Tree non-suited the Debtor from the State Court Lawsuit on August 13, 2004, but without prejudice to the refiling of the petition against Mooney at some future time.

## Discussion

A discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act to collect, recover, or offset...as a personal liability of the debtor" any debt discharged under section 727. 11 U.S.C.

---

[21] *See* Ex. P-20.

[22] A copy of the Motion for Summary Judgment was finally provided to McNally & Patrick, L.L.P. on August 3, 2004 by the new counsel retained by Green Tree to defend the complaint filed in this proceeding, but not before Mr. McNally had been forced to acquire a copy from the Rusk County District Clerk.

§524(a)(2). Congress clearly set forth the purpose of this section in the legislative history, noting:

> The injunction is to give complete effect to the discharge and to eliminate any doubt concerning the effect of the discharge as a total prohibition on debt collection efforts. This paragraph has been expanded ... to cover any act to collect, such as dunning by telephone or letter, or indirectly through ... harassment, threats of repossession and the like. The change is ... intended to ensure that once a debt is discharged, the debtor will not be pressured in any way to repay it.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 363-64 (1978); S. Rep. No. 959, 95th Cong., 2d Sess. 80 (1978).

The United States Supreme Court recently described the protection which a debtor derives from the entry of a discharge order as one of the "[c]ritical features of every bankruptcy proceeding. . . ." *Cent. Virginia Cmty. Coll. v. Katz*, ___ U.S. ___, 126 S.Ct. 990, 996, 74 U.S.L.W. 4101 (2006). As one court addressing the violation of a discharge injunction has stated,

> [T]he basic purpose of the bankruptcy system is to provide the debtor with a "fresh start." . . . Discharge is the legal embodiment of the "fresh start." It is the barrier that prevents creditors from reaching the wages, property, and other assets of debtors in bankruptcy. In other words, discharge establishes a legal right not to pay a debt and safeguards against harassment by the creditor. . . .

*Walker v. M & M Dodge, Inc. (In re Walker)*, 180 B.R. 834, 840-41 (Bankr. W.D. La. 1995). In fact,

> The automatic stay and discharge injunction are cornerstones of bankruptcy law. They are, respectively, a fundamental debtor protection and a fundamental debtor objective. The automatic stay assists debtors in regaining their financial footing by allowing them to do so free from collection efforts. And, having successfully completed the bankruptcy process, discharge provides debtors with a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt. But the automatic stay and discharge injunction must be enforced to provide any meaningful protection or incentive.

*Curtis v. LaSalle Nat'l Bank (In re Curtis)*, 322 B.R. 470, 483 (Bankr. D. Mass. 2005) (internal citations and quotations omitted). Indeed, when a discharge injunction is violated, a debtor is denied one of the primary benefits offered by the present bankruptcy system.

In the present case, it is undisputed that Mooney's debt to Green Tree was discharged under 11 U.S.C. §727. However, there is also no dispute that the lien held by Green Tree survived the bankruptcy, and Green Tree continued to hold rights against the manufactured home as its collateral on the discharged debt. The juxtaposition of the continued existence of a lien, but with no corresponding personal liability for a debtor, creates an awkward situation wherein a creditor may legitimately possess a reason to communicate with a debtor in the post-discharge period. *See, e.g., In re Garske*, 287 B.R. 537 (B.A.P. 9th Cir. 2002). However, in this instance, Mooney properly informed the creditor of her intent to surrender the collateral through the processes mandated by the

Bankruptcy Code, and at no time subsequent to that indication of intent did she ever act contrary to that stated intent. As such, it should not have even been necessary for Green Tree to contact the Debtor. However, even if Green Tree is given the benefit of the doubt regarding its initial contacts with the Debtor, it certainly had no legal basis to assert, as it did <u>repeatedly</u> in this case, that the Debtor was still legally liable to Green Tree. While Green Tree was always free to pursue its collateral *in rem*, the nature of its statements to the Debtor during this time period and its independent post-discharge actions to obtain a money judgment against the Debtor clearly crossed the line of propriety.

Green Tree asserts that its telephonic communications, though perhaps improper, were not an attempt to collect a debt as proscribed by §524(a)(2). The evidence demonstrates otherwise. Green Tree's post-discharge threats to "go public," which were intended to intimidate the Debtor into complying with its demands, eroded the safeguards against harassment which the discharge injunction represents and undermined the fresh start to which the Debtor was entitled. Green Tree further violated the discharge injunction by its filing of a post-discharge lawsuit seeking a recovery of a personal judgment against the Debtor, thereby triggering the necessity for the Debtor to engage legal representation for protection, thereby further undermining the purposes of the discharge injunction.

Yet Green Tree did not stop there. Its actions went beyond mere threats and even beyond the illegitimate filing of a state court petition seeking an *in personam* judgment.

Even after the Debtor's attorney filed the motion to reopen the bankruptcy case, thereby again informing Green Tree of its ongoing violations of the discharge injunction, Green Tree willfully plowed ahead with its strategy, continuing to contact the Debtor at her place of employment and purposefully asserting her continued personal liability "even if the home burns." It supplemented those activities with the filing of its motion for summary judgment against the Debtor in state court which sought to render her personally liable for Green Tree attorney's fees.[23]

The evidence presented in this case is clear and convincing in its demonstration of the pervasive nature of the violations of the discharge injunction committed by Green Tree. In offering a laundry list of activities proscribed by the discharge injunction, one leading commentator explains that the discharge injunction ". . . extends to all forms of collection activity, including letters, phone calls, . . .or other adverse actions intended to bring about repayment [and that] . . . [p]ost-discharge lawsuits, of course, are clearly prohibited, " 4 COLLIER ON BANKRUPTCY ¶ 524.02 at p. 524-14.9 and 524-15 (15th ed. rev. 2005). The fact that Green Tree engaged in every one of those enumerated, proscribed activities in this case cannot go unnoticed nor unremedied. In fact, Green Tree violated the discharge injunction in such a ubiquitous manner, even after being repeatedly informed of the impropriety of its conduct, the Court must conclude that Green Tree's violations were not only willful, but malicious.

---

[23] Green Tree is obviously responsible for, and is bound by, the actions of its collection attorneys. *Pioneer Inv. Svcs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 396 (1993).

Though the vexatious nature of Green Tree's conduct toward this Debtor is clear, the scope of remedies for such egregious conduct is not so self-evident.[24] Though the Bankruptcy Code contains a specific provision regarding remedies for individual debtors injured by a willful violation of the automatic stay,[25] no section of the Bankruptcy Code explicitly authorizes the court to award damages for a violation of the discharge injunction. Yet because the enforcement of the discharge injunction is such a critical component of the current bankruptcy system, it has been widely recognized that bankruptcy courts possess the authority to impose civil sanctions for a party's willful violation of the discharge injunction provided by §524. The imposition of such sanctions "may include actual damages, attorneys' fees and, when appropriate, punitive damages." *Cherry v. Arendall (In re Cherry)*, 247 B.R. 176, 187 (Bankr. E.D. Va. 2000). *Accord*, *In re Barry*, 330 B.R. 28, 37 (Bankr. D. Mass. 2005)*; In re Ray*, 262 B.R. 580, 583 (Bankr.

---

[24] Though the pleadings in this case did not clearly focus on the precise remedies available, the evidence and arguments presented by both parties at trial properly addressed the issues surrounding the types of damages available to a party whose discharge is violated. The complaint in this adversary proceeding addressed violation of both the automatic stay and the discharge injunction committed by both Conseco and Green Tree. All issues predating Green Tree's acquisition of the indebtedness and security interest were abandoned by the Plaintiff at the beginning of the trial, leaving only the allegations of Green Tree's violation of the discharge injunction. However, that dispute is referenced by the parties in the pre-trial order in which the Plaintiff repeatedly makes contentions such as "[u]nless this Court enforces the Discharge Order by holding the Defendant in contempt pursuant to 11 U.S.C. §105 and imposes sanctions against the Defendant, then there can be little doubt that Defendant will continue to pursue the Plaintiff and others similarly situated." *Joint Pre-Trial Order* entered on August 8, 2005 (dkt #21) at p. 15. The Defendant responded to those contentions in the Pre-Trial Order. To any extent the Debtor's pleadings fail to adequately reflect the remedies applicable to the evidence presented, such issues were clearly tried by consent of the parties. FED. R. BANKR. P. 7015(b) ["When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."].

[25] 11 U.S.C. §362(k) [formerly §362(h)].

D. Me. 2001); *Watkins v. Guardian Loan Co. (In re Watkins)*, 240 B.R. 668 (Bankr. E.D.N.Y. 1999); *In re Vazquez*, 221 B.R. 222 (Bankr. N.D. Ill. 1998); *In re Arnold*, 206 B.R. 560 (Bankr. N.D. Ala. 1997); *Walker*, 180 B.R. at 834, 840-41 (Bankr. W.D. La. 1995) [assessing actual damages, attorney's fees and punitive damages for violation of §524 discharge injunction]. *See also Gervin v. Cadles of Grassy Meadows II, L.L.C. (In re Gervin)*, ___ B.R. ___, No. 04-5138-C, 2005 WL 3747958, at *2 (Bankr. W.D. Tex., November 12, 2005) and *In re Feldmeier,* 335 B.R. 807 (Bankr. D. Or. 2005)[awarding actual damages for emotional distress and attorney's fees for violation of §524 discharge injunction]. The authority to assess such civil sanctions arises primarily from §105 of the Bankruptcy Code.[26] That section provides that:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

As the Fifth Circuit has noted, "Reading it [§105] under its plain meaning, we conclude that a bankruptcy court can issue any order, including a civil contempt order, necessary or

---

[26] Authority may also be derived from the court's inherent authority to enforce its own orders. As recognized in *Gervin*, 2005 WL 3747958, at *2, "At least five circuit courts (following Supreme Court authority) . . . have either explicitly or implicitly acknowledged that bankruptcy courts have inherent civil contempt powers or at least the inherent power to sanction. To be sure, the stronger source of authority is that conferred by the Bankruptcy Code itself."

appropriate to carry out the provisions of the bankruptcy code." *Placid Ref. Co. v. Terrebonne Fuel and Lube, Inc. (In re Terrebonne Fuel and Lube, Inc.)*, 108 F.3d 609, 613 (5th Cir. 1997).[27]

Regarding the assessment of actual damages, the Debtor has asked for a recovery of attorneys' fees expended on her behalf due to the conduct of Green Tree. Mooney hired the firm of McNally & Patrick, L.L.P. to defend her against the improper collection tactics of Green Tree and the attorneys of that firm have reasonably expended over 100 hours in the rendition of services to the Debtor in both the state court action initiated by Green Tree and in the prosecution of this adversary proceeding. *Cherry,* 247 B.R. at 189 ["An award of the attorney's fees [the Debtor] incurred, both in the defense of the Motion for Judgment and in the prosecution of the instant contempt proceeding, is merely to compensate [the Debtor] for the actual damages [the creditor's] contempt of the discharge order incurred."]. The hourly rate charged by the firm in this context is actually *below* that routinely charged by counsel of comparable skill and expertise on comparable matters. Upon review of the evidence presented, the Court finds that the sum of $21,000.00 constitutes a reasonable attorney's fee for the services rendered by the Plaintiff's lawyers, plus the reimbursement of accrued expenses in the amount of $643.40, for a total compensatory award of $21,643.40.

---

[27] Though *Terrebonne* endorses the applicability of §105 to enforce the provisions of a discharge injunction issued in a Chapter 11 case under §1141, "there is no logical reason why the same statute is not also available to enforce the statutory injunction afforded in section 524." *Gervin,* 2005 WL 3747958, at *2.

The Debtor also requests the assessment of punitive damages. Such requests have often been granted in a discharge injunction context due to the willful and malicious nature of the defendant's behavior, *see Walker*, 180 B.R. at 848-49 ["to recover punitive damages for violating the post-discharge injunction, the debtor must demonstrate 'malevolent intent' on the part of the violator"]; *Arnold*, 206 B.R. at 569 [noting willful and malicious conduct], *Cherry,* 247 B.R. at 190 [punitive damages unnecessary because violator was not an institutional creditor likely to have opportunity to repeat such acts] and, as outlined earlier, the behavior of Green Tree under the circumstances of this case was both willful and malicious. Green Tree did not retreat nor relent even when the illegality of its acts was exposed. Its agents continued to harass the Debtor through repeated telephonic communications in which the Debtor was erroneously advised that her personal liability on the debt remained intact, and through court action by which Green Tree sought to accomplish that very objective, despite the repeated requests and warnings from the Debtor's counsel that it should heed the discharge injunction. To limit the Debtor to compensatory damages in this context would send a clear and damaging signal to Green Tree and other institutional creditors who are routinely involved in bankruptcy cases that its attorneys and other agents are free to ignore a discharge injunction, and that one may avoid significant legal liability for such illicit activity by quickly retreating and paying only a nominal amount of attorney's fees if its illegal acts are actually exposed, thereby making the attendant risks of such conduct palatable. Such

a message would clearly undermine one of the most fundamental and significant policy objectives of the bankruptcy system.[28] The Court therefore finds that under these circumstances an award of punitive damages to the Debtor is "necessary and appropriate to carry out the provisions of the Bankruptcy Code."[29]

The Debtor has requested punitive damages in excess of $500,000.00, an amount nearly 25 times the amount of actual damages sustained by the Debtor in this case. Though the Court believes that an award of punitive damages is appropriate in these circumstances, a bankruptcy court must be guided by the reasonableness principles expressed in *BMW of North America v. Gore*, 517 U.S. 559, 575 (1996), and the Fifth

---

[28] The discharge injunction is such a critical component of the bankruptcy system that, if there be any doubt as to whether this entire panoply of sanctions can be properly assessed by a bankruptcy court for its violation, then a mandatory withdrawal of reference to the district court should be triggered in order to provide full access to remedies by debtors entitled to its protections. Because the enforcement of the discharge injunction is so integral to the process, in the opinion of this Court, resorting to such a procedure should not be necessary.

[29] The imposition of punitive damages under the authority granted under §105 in this context does not carry this court into the realm of criminal contempt as contemplated by 18 U.S.C. §401 and *Griffith v. Oles (In re Hipp)*, 895 F.2d 1503, 1515 (5th Cir. 1990). Clearly every assessment of punitive damages does not occur within that forbidden realm. The assertion that all criminal contempt sanctions are punitive in nature does not render all punitive sanctions criminal in nature. This Court is not assessing these punitive sanctions for contempt of this Court's authority. It is assessing these sanctions, as requested by the debtor, for the violation of the statutory protections provided to her under §524 and to which she is entitled as the *quid pro quo* for properly disclosing and surrendering all of her non-exempt property to the trustee for the benefit of her creditors. The vindication of these statutory protections is critical to the proper restructuring of the debtor-creditor relationship and is an integral part of the bankruptcy case, not separate and independent from it. Issuing reasonable sanctions of this type under the proper circumstances is clearly "necessary and appropriate" to insure that the bankruptcy system actually works. Although language utilized in some jurisprudence has unfortunately blurred the lines in this area, Green Tree committed no crime here, nor is it being punished for one.

Circuit precedents arising in the wake of that decision.[30] The Debtor argued that, in light of Green Tree's size, the requested amount of punitive damages was necessary in order to awake Green Tree to the seriousness of its misconduct. Though Green Tree is undoubtedly a sizable company, the Court must reject the Debtor's contentions regarding the size of the award because the Debtor has failed to present any evidence that Green Tree's improper conduct in this case has been repeated against other debtors in other cases. Thus, in viewing solely the reprehensible conduct of Green Tree in the present case, the Court finds that a punitive damage assessment against Green Tree in the amount of $40,000.00 is an appropriate award of punitive damages under the evidence presented in this case.[31]

For the reasons stated above, the Court concludes that judgment should be rendered in favor of the Plaintiff, Kelly Marie Mooney, against the Defendant, Green Tree Servicing, LLC f/k/a Conseco Finance Servicing Corp., in the amount of $61,643.40, together with post-judgment interest accruing upon such sum at the rate of 4.76% per annum until paid.

---

[30] In *Gore,* the Supreme Court outlined three guideposts courts should consider in determining whether a punitive damages award is unconstitutionally excessive: (1) the degree of the defendant's reprehensibility or culpability; (2) the disparity between the harm or potential harm suffered by the victim and the punitive damages award; and (3) the sanctions authorized or imposed in other cases for comparable misconduct. 517 U.S. at 574-75. *See also, e.g., Lincoln v. Case*, 340 F.3d 283, 292 (5th Cir. 2003); *Rubinstein v. Admin. of the Tulane Educ. Fund*, 218 F.3d 392 (5th Cir. 2000).

[31] Though it may eventually be proven that this amount was insufficient to coerce Green Tree into observing the protections imposed by a discharge, that is an issue for a future case and such a possibility does not authorize a deviation from the evidence actually presented.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, as incorporated into adversary proceedings in bankruptcy cases by Fed. R. Bankr. P. 7052.[32]  A separate judgment will be entered consistent with this opinion.

Signed on 3/23/2006

*(signature)*

THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[32] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent that any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.

-20-